# Exhibit B

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **TOSHIBA INTERNATIONAL CORPORATION,** | § § § | |
| **PLAINTIFF,** | § § | |
| v. | § § § | No. 4:19-cv-04274 |
| **ABRAHAM JOSEPH, an individual, ONEPOINT, INC., RUDOLPH CULP, as independent administrator of the ESTATE OF PABLO D'AGOSTINO, PD RENTALS, LLC, JANUARY 22 1992, LLC, VINOD VEMPARALA, an individual, V2V SOLUTIONS, LLC, and CHETAN VYAS, an individual,** | § § § § § § § § § § § § | **JURY TRIAL DEMANDED** |
| **DEFENDANTS.** | § | |

## TOSHIBA INTERNATIONAL CORPORATION'S NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT ONEPOINT, INC.

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Toshiba International Corporation ("TIC") through counsel will take the deposition upon oral examination under oath of the person or persons designated by Defendant, OnePoint, Inc. ("OnePoint"), on November 20, 2020, or on a date agreed upon by counsel, beginning at 9:00 a.m. CST. The deposition shall be held via videoconference before a notary public or

other officer authorized to administer oaths. The testimony to be given will be recorded by stenographic and videographic means.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, OnePoint is required to produce one or more witnesses at the stated location and time who are aware of and prepared to testify about OnePoint's knowledge of the topics listed in the Schedule of Deposition Topics attached to this Notice as Exhibit A. If the designated representative or representatives do not have such knowledge, they are required to acquire it through whatever reasonable investigation may be necessary.

The Relevant Period for these topics is January 1, 2007 through the date of the deposition.

# EXHIBIT A

# SCHEDULE OF DEPOSITION TOPICS

TIC will depose OnePoint's representative or representatives on the following matters during the Relevant Period:

1. OnePoint placing TIC's Facilities Manager, Pablo D'Agostino, on OnePoint's payroll and providing him with W-2s reflecting payments of $24,084 in 2007 and $66,453 in 2008.

2. All work performed by Pablo D'Agostino for OnePoint as an employee and/or contractor and all payments made to him, his friends, or family members on his behalf.

3. Each instance in which OnePoint gave Pablo D'Agostino, Melissa D'Agostino, and/or Ashley Tucker anything of value, including cars, trucks, cash, vacations, free construction or maintenance work such as painting at a residence owned by them, jewelry, shoes, clothing, payment of personal expenses, and payment of Home Depot expenses.

4. The specific details about the payments, trips, credit cards, and cash provided by OnePoint to Pablo D'Agostino as described in Response No. 3 of OnePoint's Supplemental Responses to TIC's First Set of Interrogatories.

5. The transfer of a 2009 Ford F250 truck from OnePoint to Pablo D'Agostino as described in Response No. 4 of OnePoint's Supplemental Responses to TIC's First Set of Interrogatories.

6. The creation and submission of bids to TIC by OnePoint, Abraham Joseph, and/or OnePoint's employees in the names of companies other than OnePoint, including Millenium Performance, The Atkins Group, and A&A Premier Builders, as identified in Response # 5 of OnePoint's Supplemental Responses to TIC's First Set of Interrogatories and as alleged in Paragraph 39 of TIC's Amended Complaint.

7. The number of bids created by OnePoint and/or Abraham Joseph and submitted to TIC in the names of companies other than OnePoint, including the name of Millenium Performance, The Atkins Group, and A&A Premier Builders.

8. The method by which OnePoint typically submitted bids in its own name and in the name of other companies and the method by which OnePoint received its payments from TIC, including whether the U.S. mails, FedEx, UPS, or other similar services were used.

9. Coordination with Pablo D'Agostino regarding the submission of bids by OnePoint on behalf of itself and other companies, including Millenium Performance, The Atkins Group, and A&A Premier Builders.

10. Coordination between OnePoint, Abraham Joseph, Pablo D'Agostino, Sudhakar Kalaga, Chetan Vyas, and/or Vinod Vemparala regarding the submission of bids to TIC.

11. Communications regarding bids to TIC between any OnePoint officer or employee other than Abraham Joseph and Pablo D'Agostino, Vinod Vemparala, Sudhakar Kalaga, and/or Chetan Vyas.

12. Abraham Joseph's interview at TIC in December 2019, including the statements made by Mr. Joseph during the interview.

13. The e-mail systems, electronic data storage systems, and text messaging services used by OnePoint from 2007 to 2019, including the identity of the e-mail service providers, the existence of physical or cloud-based backups, and the deletion or destruction of OnePoint's e-mails and text messages.

14. The e-mail systems, electronic data storage systems, and text messaging services used by Abraham Joseph from 2007 to 2019, including the identity of the e-mail service providers, the existence of physical or cloud-based backups, and the deletion or destruction of Mr. Joseph's e-mails and text messages.

15. All the steps taken by OnePoint to preserve electronic data and physical documents, including e-mails, following TIC's filing of the Complaint in October 2019, TIC's interview of Mr. Joseph in December 2019, and the filing of TIC's Amended Complaint against OnePoint and Mr. Joseph in February 2020.

16. All the electronic data and physical documents, including e-mails, that OnePoint and/or Mr. Joseph destroyed following TIC's filing of the Complaint in October 2019, TIC's interview of Mr. Joseph in December 2019, and the filing of TIC's Amended Complaint against OnePoint and Mr. Joseph in February 2020.

17. All the steps taken by OnePoint, Abraham Joseph, and their agents, including counsel, to search for, collect, and review electronically stored documents and physical documents potentially responsive to TIC's Requests for Production issued to OnePoint and Abraham Joseph. This will include: (1) the volume of documents collected, (2) the document review methodology to identify responsive documents, (3) instructions given to Defendants' e-discovery vendor, (4) the elimination of non-responsive documents, and (5) the keywords used for the document review.

18. An explanation for why OnePoint and Mr. Joseph produced just 199 e-mails for a time period spanning 2007 to 2019, including just 20 emails with Pablo D'Agostino.

19. The creation of invoices from OnePoint to TIC for the services of electricians provided by Electrical & Mechanical Solutions, L.L.C. ("EMS"), including the markups and profit margins applied to EMS's invoices and the padding of regular and overtime hours by adding thousands of fictious hours to its invoices to TIC not found on EMS's invoices. Pay particular attention to PO

Number 906055, although we may ask questions about other journeyman electrician invoices.

20. The creation of invoices from OnePoint to TIC for the services of electricians provided by Telios to create an Electrical One Line Diagram, including the markups and profit margins applied to Telios's invoices and the padding of regular and overtime hours by adding thousands of fictious hours to its invoices to TIC not found on Telios's invoices. Pay particular attention to PO Numbers 901027, 902443, 903426, and 903554, although we may ask questions about other journeyman electrician invoices.

21. The actual work performed by journeymen electricians that OnePoint provided to TIC, including a description of the details of the work actually done by the electricians for each invoice submitted that is not evident on the face of the invoice.

22. OnePoint's invoicing and collection of sales taxes from TIC for construction, maintenance, and electrician work, including the amounts remitted to the State of Texas and local authorities, if any, each year from 2007 to 2019 for TIC-related work. Pay particular attention to the collection of sales taxes for the journeymen electricians from TIC and the payment of sales taxes to the State of Texas and local authorities.

23. The total amounts invoiced to and paid by TIC for work done by OnePoint on an annual basis from 2007 to 2019.

24. All complaints that OnePoint and/or Abraham Joseph made to TIC management about Pablo D'Agostino and his conduct, including complaints that D'Agostino made demands for payment from OnePoint.

25. Identification of all TIC employees that OnePoint informed about: (1) payments and gifts OnePoint was making to Pablo D'Agostino, (2) placing Pablo D'Agostino on OnePoint's payroll, (3) OnePoint's submission of bids in the name of other companies, (4) OnePoint's inflated profit margins on work it did for TIC, and (5) OnePoint's padding of hours for journeymen electricians. This request includes a description of all conversations describing this conduct with TIC employees.

26. Identification of all individuals outside of TIC that have any knowledge that OnePoint was doing any of the following: (1) making payments to Pablo D'Agostino, (2) placing Pablo D'Agostino on OnePoint's payroll, (3) submitting bids in the name of other companies for TIC projects, (4) overcharging TIC for work, and (5) padding of hours for journeymen electricians. This request includes a description of all conversations concerning this conduct with such individuals, including the owners or employees of A&A

Premier, Millenium Performance, the Atkins Group, KIT Construction Services, Inc., and KIT Professionals, Inc.

27. When OnePoint first became aware of TIC's lawsuit against Sudhakar Kalaga and Pablo D'Agostino.

28. Conversations OnePoint and/or Abraham Joseph had regarding TIC's lawsuit outside the presence of counsel, including conversations with Pablo D'Agostino, Sudhakar Kalaga, Ashley Tucker, and the owners of A&A Premier, Millenium Performance, and the Atkins Group.

29. Pablo D'Agostino and/or Sudhakar Kalaga's instruction or direction to OnePoint to submit bids for projects between 2011 and 2019 at a particular price.

30. Bids submitted to TIC by OnePoint from 2011 to 2019, including:

| Winner | Fake Bidders | Requisition Date | PO# | Amount (USD) |
|---|---|---|---|---|
| KIT | V2V, OnePoint | 21-Nov-2011 | 906748 | 601,825.00 |
| KIT | V2V, OnePoint, A&A | 7-Oct-2013 | 950527 | 550,000.00 |
| KIT | V2V, OnePoint, A&A Premier, Reytec | 29-Jan-2015 | 951184 | 1,680,000.00 |
| KIT | V2V, PRV, Redwood Builders, OnePoint | 20-Apr-2017 | 7018425 | 4,550,825.00 |
| KIT | V2V, OnePoint | 17-Sep-2018 | 7045528 | 32,450.00 |
| KIT | V2V, OnePoint | 17-Sep-2018 | 7045529 | 41,550.00 |

31. OnePoint's overall corporate structure, including the shareholders, officers, directors, and the existence of any corporate parents, subsidiaries, or affiliates.

32. The nature of the work performed by OnePoint, including pre-construction, construction and engineering services for outpatient facilities, office spaces, and cardiac rehab, as shown on its website.

33. The clients that OnePoint has worked for, including those identified on its website for clinics, Toshiba, Methodist Hospital, and Memorial Hermann Hospital.

34. The identification of OnePoint employees responsible for preparing bids, hiring subcontractors, and performing construction and maintenance work for TIC projects.

35. The identity of the subcontractors used by OnePoint to complete work at TIC's facilities for each purchase order issued to OnePoint.

36. OnePoint's work, pricing, bidding, and profit margins for the following projects:

| PO# | OnePoint JOB# | PROJECT DESCRIPTION |
|---|---|---|
| 900757 | 512-07 | Seal/Caulk around Exterior Glass Windows |
| 901178 | 609-07 | Control Plant Expansion Phase 1 |
| 901711 | 762-08 | Control Plant Expansion Phase 2 |
| 901762 | 821-08 | Control Plant Expansion Electrical Upgrades |
| 902826 | 1043-08 | Build retaining wall, steps and sidewalk |
| 902846 | 1044-09 | Build retaining wall, steps and sidewalk |
| 903918 | 1275-09 | PEP Roof Decking Repair |
| 904616 | 1410-10 | Roof replacements Phase 2 |
| 905234 | 1410-10 | Roof replacements Phase 3 |
| 905975 | 1410-10 | Roof replacements Phase 4 |

| 906027 | 1410-10 | Roof replacements Phase 5 |
| 905689 | 1553-10 | HEV Renovation |
| 902548 | 990-08 | Roof Repair to Corporate Residences |
| 902696 | 1021-08 | Upgraded Drainage |
| 902575 | 994-08 | Roof Decking |
| 902766 | 1023-08 | Chain Link Fence |
| | 4255-18 | Okanella Warehouse Storage Racks |

37. The method(s) used by OnePoint to calculate the amounts to bid or charge TIC for maintenance, construction, and electrical work.

38. The amount of profit earned by OnePoint on each purchase order issued by TIC and on an annual basis from TIC.

39. The relationship between Abraham Joseph and Pablo D'Agostino, including conversations between them.

40. The introduction of Pablo D'Agostino to Sudhakar Kalaga.

41. OnePoint's coordination with Sudhakar Kalaga to submit a fake bid under the name of V2V Solutions through Vinod Vemparala in November 2010 as alleged in Paragraphs 50-53 of the Amended Complaint.

42. Any work TIC paid OnePoint for but which it never finished.

43. Presentations prepared by OnePoint for Pablo D'Agostino.

44. The relationship among OnePoint, Abraham Joseph, Sudhakar Kalaga, KIT Construction, and KIT Professionals.

45. The bids identified in Paragraph 39 of the Amended Complaint.

46. Steps taken by OnePoint to conceal its role in the fraudulent scheme alleged in the Amended Complaint, including the creation of fictitious bids and the payment of bribes to Pablo D'Agostino.

47. Identification and background about all the OnePoint employees that worked on TIC projects, including the employees identified in OnePoint's Responses to TIC's First set of Interrogatories.

48. In furtherance of TIC's constructive trust claim, provide the total amounts of annual distributions of profit and salary by OnePoint to its shareholders from 2007 to 2019 that includes proceeds of payments made by TIC.

49. Annual revenue and profit figures for OnePoint from 2007 to 2019.

50. The identification, location, last known address, telephone number, and e-mail address of any person having or believed to have any documents or other electronic or non-electronic files regarding the topics or facts underlying these topics.

Dated: October 20, 2020      **WHITE & CASE**LLP

By: */s/ Michael Rodgers*
Michael Rodgers
Texas State Bar No. 24095114
S.D. Tex. Bar No. 2638667
michael.rodgers@whitecase.com
609 Main St., Ste. 2900
Houston, TX 77002
tel.: (713) 496-9700

fax: (713) 496-9701
*Attorney-in-Charge for Toshiba International Corporation*

<u>OF COUNSEL</u>
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Samuel J. Sharp (*pro hac vice*)
samuel.sharp@whitecase.com
**WHITE & CASE**LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
tel.: (202) 626-3600
fax: (202) 639-9355

Daniel Fridman (*pro hac vice*)
dfridman@ffslawfirm.com
Fridman Fels & Soto, PLLC
2525 Ponce de Leon Boulevard
Suite 750
Coral Gables, FL 33134
tel.: (305) 569-7720
fax: (786) 627-4145

*Counsel to Toshiba International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2020, I caused a copy of Toshiba International Corporation's Notice of Rule 30(b)(6) Deposition of Defendant OnePoint, Inc. be served via e-mail on counsel for all parties.

Respectfully submitted,

**WHITE & CASE** LLP

By: */s/ Samuel J. Sharp*
Samuel J. Sharp
samuel.sharp@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC 20005
tel.: (202) 626-3600
fax: (202) 639-9355